**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DUANE J. BROWN,

       Plaintiff,

v.                                                              Civ. No. 14-1032 SCY/SMV

DARIEN D. BROWN, *et al.*,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

    THIS MATTER is before the Court on Defendants' motion for partial judgment on the pleadings. *Doc. 17*. In this motion, Defendants present a spattering of arguments why the Court should dismiss some, but not all, of Plaintiff's claims. Plaintiff opposes the motion. *Doc. 18*. Having reviewed the relevant briefing, including Defendants' reply (*doc. 19*), and being otherwise fully advised, the Court has decided to grant Defendants' motion in part and deny the motion in part, dismissing Plaintiff's fraud claims without prejudice and dismissing Plaintiff's breach of fiduciary duty claims and power of attorney authority claims with prejudice. Furthermore, the Court has determined that it lacks subject-matter jurisdiction over some of Plaintiff's claims under the probate exception to federal jurisdiction. The Court will dismiss these claims without prejudice.

    **I.**    **Factual Background**

    In the complaint, Plaintiff Duane Brown accuses Defendant Darien Brown (his brother) and Defendant Dianne Brown (his sister-in-law) of stealing his inheritance by fraudulently or otherwise improperly convincing Darline Brown (Plaintiff and Defendant Darien's mother) to transfer property belonging to the family ranch to Defendants. *Doc. 1*, Ex. 1 ¶ 21-22. For the

purposes of ruling on this motion, the Court accepts the following factual allegations as true. In early 2007, Darline Brown, Plaintiff's mother, was diagnosed with dementia. *Id.* ¶¶ 11, 20. By January 2008, she was living in an assisted living facility. *Id.* ¶ 20. In 2010, she moved to a more restricted facility. *Id.* She subsequently died on February 27, 2014. *Id.* ¶ 6.

Sometime after her death, Defendant Darien gave Plaintiff a copy of a document that he claimed was Darline's last will and testament. *Id.* ¶ 19. This "will," which is dated July ____,[1] 2010, contains (1) a handful of specific bequests, including a provision leaving Plaintiff a 1/3 interest in Darline's mineral, gas, and oil rights, and (2) a residuary clause leaving the remainder of her property to Defendant Darien. *Id.* at 34-36. After his mother's death, Plaintiff also learned of five suspect property transactions executed by his mother (or in his mother's name) during the time she was suffering from advanced dementia. *Id.* ¶¶ 20, 23. The following table lists the date, subject matter, and the alleged participants in each transaction:

| Date: | Transaction Type: | Property Owner: | Recipient: | Signed By: |
|---|---|---|---|---|
| 8/5/2008 | Mortgage | Darline S. Brown Trust | First National Bank | Darien Brown, as power of attorney for Darline Brown, trustee |
| 7/8/2010 | Land Transfer | Darline S. Brown Trust | Defendants | Darline Brown, trustee |
| 8/9/2010 | Trust Revocation & Return of Property to Grantor | Darline S. Brown Trust | Darline Brown | Darline Brown, trustee |
| 4/19/2012 | Lease Transfer | Plaintiff | Defendants | Darline Brown, as power of attorney for Plaintiff |
| 7/6/2012 | Land Transfer | Darline Brown | Defendants | Darline Brown |

*See generally id.* Three of the above transactions involved the Darline S. Brown Trust, which Darline created on June 26, 1996. *Id.* ¶ 9. According to Plaintiff, he was a beneficiary of the

---

[1] The will does not specify which day in July 2010 it was signed.

Trust prior to its revocation. *Id.*

Once Plaintiff learned of the will and the above transactions, he spoke with his brother, Defendant Darien, who then sent Plaintiff a handwritten letter purporting to rescind the will and divide "the ranch" equally with Plaintiff. *Id.* ¶ 23. The complaint does not indicate what, if any, response, there was to this letter.

## II.     Plaintiff's Claims

On October 10, 2014, Plaintiff filed the present action against Defendants in the Eighth Judicial District Court of New Mexico. In Plaintiff's complaint, which Defendants subsequently removed to federal court,[2] Plaintiff asks the Court to declare the five transactions discussed above invalid and to enter a judgment determining who owns the relevant property. *Id.* ¶¶ A-H. Additionally, Plaintiff asks the Court to find the July 2010 will invalid and to enter a judgment finding that Darline Brown died intestate. *Id.* ¶¶ H-I. Finally, Plaintiff seeks personal damages against Defendants for tortious interference with his inheritance and prima facie tort. *Id.* ¶¶ 28-30, 36-38, K. Plaintiff presents three different legal theories to support the invalidation of the five transactions and the will: (1) Darline Brown was incompetent to make these transactions; (2) the transactions are fraudulent; and (3) the transactions are the result of coercion, undue influence, and duress.

At the time the complaint was filed, Plaintiff indicated that he was "not aware of any

---

[2] Because Defendants are citizens of New Mexico, Defendants' removal of this action solely on the basis of diversity jurisdiction violates 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). Plaintiff, however, has not moved to remand the case to state court and the Court does not have the power to *sua sponte* remand a case due to a procedural defect in the act of removal. *Feichko v. Denver & Rio Grande Western R.R.*, 213 F.3d 586, 591 (10th Cir. 2000) ("[R]emoval in violation of a statutory provision does not deprive a federal district court of subject matter jurisdiction so long as the court would have had original jurisdiction over the case had it been filed there in the first instance."); *Archuleta v. Lacuesta*, 131 F.3d 1359, 1366 (10th Cir. 1997) (explaining that every circuit to address the issue has found that district courts cannot "remand an action sua sponte for a procedural or nonjurisdictional defect").

probate or probate action that ha[d] been filed for Darline S. Brown." *Id.* ¶ 7. On March 20,

2015, the Court held a motion hearing to discuss Defendants' motion for judgment on the

pleadings. At this hearing, the Court asked the parties if they planned to file a probate action. In

response to this inquiry, Plaintiff's counsel, Terrence Kamm, indicated that he would like to have

Darline's estate probated and that he would be filing a probate action at the appropriate time.

### III.    Standard of Review

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the

pleadings any time after the pleadings close, but before the motion would delay the trial. FED. R.

CIV. P. 12(c). Such a motion is subject to the same standard of review as a motion to dismiss

filed under Federal Rule of Civil Procedure 12(b)(6). *Colony Ins. Co. v. Burke*, 698 F.3d 1222,

1228 (10th Cir. 2012). Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for

"failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The

Supreme Court has articulated a two-step approach for district courts to use when considering a

motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court must identify

the adequately pleaded factual allegations contained in the complaint, disregarding any

unsupported legal conclusions in the process. *Id.* at 678. While a complaint need not include

detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Id.* Next, having identified the adequately pleaded facts, the Court

"should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Id.* at 679. Stated concisely, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Id.* at 678. In making this determination, the court views the complaint in the light

most favorable to the plaintiff. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

**IV.     Discussion**

     **a.  Probate Exception**

The probate exception to federal jurisdiction is a long-standing, judicially-created doctrine that precludes federal courts from assuming general jurisdiction over state probate claims. *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). While the probate exception was once interpreted more broadly, in 2006, the Supreme Court clarified that federal courts retain jurisdiction over probate-related claims, unless a claim requires the court to (1) probate or annul a will, (2) administer a decedent's estate, or (3) "dispose of property that is in the custody of a state probate court." *Id.* at 311-312. The probate exception reserves these, and only these, purely probate matters to the exclusive jurisdiction of the state courts. *Id.*

Before *Marshall*, most federal courts, including the Tenth Circuit, construed the probate exception far more generously. For example, in *Rienhardt v. Kelly*, 164 F.3d 1296 (10th Cir. 1999), the Tenth Circuit held that the probate exception included actions to probate or annul a will as well as actions "ancillary to . . . probate proceedings." *Id.* at 1301.  The Tenth Circuit defined "probate" and "ancillary" in terms of state law as it believed "[t]he standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court . . ." *Id.* at 1300 (quoting *McKibben v. Chubb*, 840 F.2d 1525, 1529 (10th Cir. 1988)). Based on this definition and on an analysis of New Mexico law, the Tenth Circuit found that the probate exception barred the plaintiff's claim that the defendants should be personally liable for exerting undue influence on a testator in the creation of a will that disinherited the plaintiff. *Id.* at 1300-1301.

In *Marshall*, the Supreme Court cited *Rienhardt* as an example of a case where a federal court "block[ed] federal jurisdiction over a . . . matter[] well beyond probate of a will or administration of a decedent's estate." *Marshall*, 547 U.S. at 311. The Supreme Court then applied the more rigorous standard outlined above to hold that a federal court may, without running afoul of the probate exception, adjudicate a claim that a defendant tortiously interfered with an expected inheritance. *Id.* at 312. As part of this analysis, the Supreme Court reiterated that, unlike a tort suit for personal damages, a suit to probate or annul a will is not cognizable in federal court. *Id.*

There is, unfortunately, no Supreme Court or Tenth Circuit case law further explicating *Marshall's* statement that the probate exception reserves to state courts "the probate or annulment of a will." *Marshall*, 547 U.S. at 311-312. In the absence of such guidance, the Court assumes that the Supreme Court meant what it said – a federal court cannot probate, *i.e.* validate, or annul, *i.e.* invalidate, a will. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining probate as "[t]he judicial procedure by which a testamentary document is established to be a valid will" and annulment as "[t]he act of nullifying or making void"). The Court must, therefore, decline jurisdiction over Plaintiff's request that the Court enter a declaratory judgment that Darline's will is invalid and that she died intestate.

Before making this determination, the Court alerted the parties to the probate exception and set a hearing to discuss whether this exception barred Plaintiff's claims regarding the validity of the will. *Doc. 20*. At the hearing, Defendants contended that the probate exception was inapplicable to the case at hand. They argued that the Court should, in accordance with Tenth Circuit law that predates *Marshall*, define the scope of the probate exception according to New Mexico law, which Defendants believe would allow a court of general jurisdiction to hear

Plaintiff's claims regarding the validity of a will. There are myriad problems with this contention. First, it is not clear to this Court that New Mexico law would permit a non-probate court to hear Plaintiff's stand-alone request that the Court enter a declaratory judgment regarding the validity of Darline's will. Second, as Defendants acknowledged at the March 20, 2015 hearing, Colorado law, not New Mexico law, may govern Plaintiff's claims regarding the validity of the will. The Court need not make a ruling on these matters, however, because the Court does not agree that state law has any bearing on the probate exception post-*Marshall*.

The case Defendants cite to bolster their understanding of the probate exception – *McKibben v. Chubb* – predates *Marshall* by roughly eighteen years. In *McKibben*, as in *Rienhardt*, the Tenth Circuit excluded a tortious interference claim challenging property transfers under a will from federal court. *Rienhardt*, 164 F.3d at 1300-1301. In both cases, the Court reasoned that state law circumscribed and defined the scope of the federal probate exception. *Id.* at 1300; *McKibben*, 840 F.2d at 1529 ("If a state vests its own general courts of equity with jurisdiction to hear suits involving contested wills, the federal courts in the state may enforce that right, and may entertain concurrent jurisdiction over those suits when diversity of citizenship exists."). As already discussed, the Supreme Court rejected this approach to the probate exception in *Marshall*.

There, the Supreme Court considered and reversed a Ninth Circuit determination that the probate exception includes "questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument." *Marshall*, 547 U.S. at 299-300. Like the Tenth Circuit, the Ninth Circuit was of "the view that state-court delineation of a probate court's exclusive adjudicatory authority could control federal subject-matter jurisdiction." *Id.* at 304. The Supreme Court criticized this approach, holding that federal, not

state law, governed the scope of federal jurisdiction. *Id.* at 313-314. The Supreme Court reversed

the Ninth Circuit and provided its own definition of the probate exception:

> [T]he probate exception reserves to state probate courts the probate or annulment of a
> will and the administration of a decedent's estate; it also precludes federal courts from
> endeavoring to dispose of property that is in the custody of a state probate court. But it
> does not bar federal courts from adjudicating matters outside those confines and
> otherwise within federal jurisdiction.

*Id.* at 311-312.

As the Court understands it, Defendants are arguing that the Court should read into this

definition an additional limitation on the probate exception: namely, that the probate exception

does not bar federal adjudication of a claim to probate or annul a will or administer a decedent's

estate as long as this claim is cognizable in a state court of general jurisdiction. The plain

language of *Marshall*, however, makes clear that federal jurisdiction under the probate exception

does not depend on state law. In this regard, *Marshall* supersedes *McKibben* and *Rienhardt* and

forecloses Defendants' argument.

This reading of *Marshall* accords with the way other circuit courts have understood the

decision. *See Lee Graham Shopping Ctr., LLC v. Estate of Kirsch*, 777 F.3d 678 (4th Cir. 2015)

(explaining that the probate exception did not apply where the plaintiff's claim required the court

to interpret the terms of a partnership agreement, not the terms of the decedent's will);

*Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007) (refusing to exercise jurisdiction over

plaintiff's claims that the will was fraudulent because these claims "clearly involve[d] the

probate or annulment of a will and thus [were] barred by the probate exception."); *Struck v. Cook

County Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) ("State courts, moreover, are assumed

to have developed a proficiency in core probate . . . matters to have evolved procedures tailored

to them, and some even employ specialized staff not found in federal courts.") (emphasis added).

In all of these cases, the Court of Appeals defined or discussed the probate exception without any reference to state law. Although some district courts have eschewed this straightforward approach, *see*, *e.g.*, *Lampert v. Lapin*, No. 4:09CV443, 2009 U.S. Dist. LEXIS 48056 (E.D. Mo. June 5, 2009), they have not provided a sound reason for doing so. Thus, the Court will follow the path of those district courts that have dismissed claims to probate or annul a will without any consideration of whether these claims were cognizable in a state court of general jurisdiction. *See*, *e.g.*, *Lamica v. Lapierre*, No. 5:05-CV-964, 2006 U.S. Dist. LEXIS 85910, at *6 (N.D.N.Y Nov. 28, 2006); *In re Robert G. Wallace Trust*, No. No. 2:14-cv-01876, 2014 U.S. Dist. LEXIS 150808, at *13-14 (E.D. Cal. Oct. 22, 2014). Because the Court is only dismissing Plaintiff's claim for a declaratory judgment that Darline's will is invalid and that she died intestate, the Court will now consider Defendants' arguments in favor of dismissing some of Plaintiff's other claims.

### b.  Choice of Law

In their motion for judgment on the pleadings, Defendants ask the Court to dismiss some of Plaintiff's state law claims regarding the validity of the property transactions executed by Darline Brown.[3] The parties have agreed that these claims are governed by New Mexico law to the extent the real property at issue is located in New Mexico. *Doc. 21* at 2; *Doc. 23*. This is consistent with New Mexico choice-of-law principles, which this Court applies when exercising diversity jurisdiction. *Kipling v. State Farm Mut.*, 774 F.3d 1306, 1310 (10th Cir. 2014) ("In a diversity action we apply the conflict-of-laws rules of the forum state."). In general, New Mexico courts "follow[] the Restatement (First) of Conflict of Laws when analyzing choice of law issues." *Flemma v. Halliburton Energy Servs.*, 2013-NMSC-022, ¶ 14. While they have occasionally deviated from this rule and relied on the Restatement (Second) of Conflict of Laws,

---

[3] As discussed below, Defendants do not move to dismiss Plaintiff's tort claims.

*see*, *e.g.*, *Ferrell v. Allstate Ins. Co.*, 2008-NMSC-042, ¶ 56, 144 N.M. 405, in this case, the two Restatements lead to the same result. Because the conveyance instruments at issue do not contain choice of law provisions, both the First and Second Restatement dictate that Plaintiff's challenge to the conveyance of the real property at issue be analyzed according to New Mexico law, the law of the state where the property is situated. Restatement (Second) of Conflict of Laws § 223 (1971); Restatement (First) of Conflict of Laws, §§ 215-218 (1934); *see also Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, ¶ 22, 148 N.M. 228 ("Because the land is located in New Mexico, New Mexico law properly applies."). Thus, the Court will analyze Defendants' arguments regarding the merits of Plaintiff's state law claims under New Mexico law.

### c.   Statute of Limitations

Although the statute of limitations is an affirmative defense, a court may grant a motion to dismiss a claim as time-barred, if "the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Properties*, 627 F.2d 1036, 1041 (10th Cir. 1980); *see also Glaser v. City & County of Denver*, 557 F. App'x 689, 698 (10th Cir. 2014) ("[A] statute of limitations question may be appropriately resolved on a motion to dismiss."). Here, Defendants argue that Plaintiff's claims regarding (1) the validity of the 2008 correction mortgage, and (2) the legality of the 2010 trust revocation fall outside the applicable statute of limitations.

To the extent these claims are fraud claims, a four-year statute of limitations applies. NMSA § 37-1-4. The remainder of these claims are subject either to the six-year statute of limitations for written contracts and promissory notes, NMSA § 37-1-3, or the four-year catch-all statute of limitations, NMSA § 37-1-4. Thus, if the statute of limitations accrued automatically in 2008 and 2010, at the time of the suspicious transactions, the above claims would clearly be

untimely. The parties, however, agree that the "discovery rule" governs the above claims. *Doc. 23*. Under the "discovery rule," the statute of limitations does not begin to run until a plaintiff discovers or should have discovered such facts as would, on reasonable diligent investigation, lead to knowledge of the cause of action. *Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶18, 148 N.M. 627. Stated succinctly, the timeliness of Plaintiff's claims depends on when Plaintiff acquired actual or constructive knowledge of Defendants' alleged misconduct.

Defendants argue that Plaintiff should be imputed with constructive knowledge of the 2008 correction mortgage and 2010 trust revocation as of the date that these transactions were recorded in the county records. To support this argument, Defendants cite to NMSA § 14-9-2, a New Mexico statute which provides that certain property records "shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording." As Plaintiff points out, however, the New Mexico Supreme Court has judicially limited the plain meaning of "all the world" to include only "those persons who are bound to search the record." *Angle v. Slayton*, 1985-NMSC-032, ¶ 7, 102 N.M. 521. The New Mexico Supreme Court justified this gloss by reasoning that the recording statutes are intended to protect those with subsequent dealings with property, not to shelter fraud. As a result, the Court held that a person should not be charged with knowledge of a recording unless a reasonably prudent person in the same position would have had some reason to check the property records. *Romero v. Sanchez*, 1971-NMSC-129, ¶¶ 24-26, 83 N.M. 358.

Here, the Court agrees with Plaintiff that he did not have any reason, prior to his mother's death, to check the property records for the property comprising the family range. *See Brown v. Behles*, 2004-NMCA-028, 135 N.M. 180 ("We are not aware of any principle of law imposing on landowners a duty to be cognizant of the status of their title at all times, nor do we wish to

create or imply such a duty that could render titleholders unpredictably vulnerable to

claimants."). For this reason, the Court finds that Plaintiff's claims regarding the validity of the

2008 correction mortgage and the 2010 trust revocation did not accrue, at the earliest, until

February 27, 2014, the day Darline died. Thus, these claims are timely filed.

Defendants also argue that the statute of limitations bars the Court from reforming or

revoking the 1999 power of attorney Plaintiff gave to Darline. This may, in fact, be true. Given

Plaintiff's response and Plaintiff's argument at the March 20, 2015 hearing, however, the Court

does not construe Plaintiff's complaint as requesting reformation of the 1999 power of attorney.

Rather, as the Court understands the complaint, Plaintiff is arguing that this power of attorney

did not give Darline the authority to transfer Plaintiff's property to Defendants. The Court will

address Defendants' arguments regarding the merits of this claim below.

### d.  Pleading Fraud with Particularity under Rule 9(b)

Defendants ask the Court to dismiss as insufficiently pled Plaintiff's claims that

Defendants fraudulently signed, or fraudulently caused Darline to sign, the mortgage, property

transfer, and trust revocation documents attached to the complaint. As Defendants emphasize,

Federal Rule of Civil Procedure 9(b) directs plaintiffs alleging fraud to "state with particularity

the circumstances constituting fraud." As interpreted by the Tenth Circuit, this rule requires, at a

minimum, "that a plaintiff set forth the who, what, when, where and how of the alleged fraud."

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-727 (10th Cir.

2006). Plaintiff has failed to satisfy this standard. Plaintiff's fraud claims are entirely inferential

and are supported only by allegations that Darline was incompetent when her name was signed

on a variety of documents pertaining to her estate. While suspicious, these facts do not explain

how the alleged fraud was perpetrated nor do they, as required, paraphrase the contents of the

alleged false representations. *Id.*; *see also Matthews v. LaBarge, Inc.*, 407 F. App'x 277, 282 (10th Cir. 2011) (allegations were insufficient to support a claim of fraud because they gave no indication of "what words" were used to convey the allegedly fraudulent promise). Thus, the Court will dismiss Plaintiff's fraud claims without prejudice.

Plaintiff seeks to avoid this outcome by arguing that the Rule 9(b) particularity requirement should be relaxed in this case because Defendants have sole access to the evidence of the alleged fraud. *Doc. 18* at 8. The Court is sympathetic to Plaintiff's position and aware that courts have sometimes lessened the strictures of Rule 9(b) when the information regarding the alleged fraud is within the defendant's exclusive possession. *See*, *e.g.*, *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) (acknowledging that a lower 9(b) standard applies when the information regarding the fraud is in the hands of the defendant). The Tenth Circuit, however, has rejected this broad approach and instead adopted a narrow exception that allows plaintiffs to base "allegations of fraud . . . on information and belief when the facts in question are peculiarly within the opposing party's knowledge." *Koch v. Koch Indus.*, 203 F.3d 1202, 1237 (10th Cir. 2000).

The Tenth Circuit has emphasized that this exception "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 728 (10th Cir. 2006). In other words, a plaintiff's outsider status does not excuse him from the requirement that his allegations of fraud must be specific in nature, even if they are based only on belief, not evidentiary support. *Id.* (generalized

allegations not enough to satisfy Rule 9(b)); *see also United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, No. 99-3105, 2000 U.S. App. LEXIS 26914, at *11-12 (10th Cir. October 26, 2000) (citing with approval a Florida case that held that the "relaxed standard does not remove the plaintiff's duty to adequately plead the content of the alleged fraudulent representations"). Here, Plaintiff's complaint contains little indication of how the alleged fraud occurred. As a result, the Court must dismiss Plaintiff's fraud claims. The Court notes, however, that it will not dismiss Plaintiff's fraud claims with prejudice, but will allow Plaintiff an opportunity to move to amend the complaint to fix this deficiency if further discovery justifies such a claim.

In the above analysis, the Court limited its attention to Plaintiff's fraud claims. Defendants also ask the Court to dismiss Plaintiff's undue influence, coercion, and duress claims under Rule 9(b). As Defendants point out, in addition to governing explicitly-labeled fraud claims, Rule 9(b) also applies to claims grounded in fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003); *S2 Automation LLC v. Micron Tech., Inc.*, 281 F.R.D. 487, 493 (D.N.M. 2012). A claim is "grounded in fraud" if the plaintiff's basis for the claim is that the defendant committed fraud. *Vess*, 317 F.3d at 1103-1104. Not all instances of misconduct are grounded in fraud.  *See*, *e.g.*, *FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1204 n. 7 (10th Cir. 2005) (unfair trade practices claim need not be pled with particularity). A court is not free to extend Rule 9(b) to cases where the plaintiff does not accuse the defendant of fraud, as that term is defined under the common law. *Id.*

Here, Plaintiff's claims of undue influence, coercion, and duress are not equivalent to common law claims of fraud and need not, therefore, satisfy the heightened pleading requirements of Rule 9(b). *See Records v. Geils Unlimited Research, LLC*, No. 12-11419-FDS,

2013 U.S. Dist. LEXIS 34082, at *27 (D. Mass. Mar. 12, 2013) ("The Court will not, in the absence of clear precedent to the contrary, expand the reach of Rule 9(b)'s requirements to allegations of either duress or coercion in the context of contract formation."). For example, in New Mexico, undue influence "means influence, improperly exerted, which acts to the injury of the person swayed by it or to the injury of those persons whom [he or] she would have benefited." *In re Estate of de Baca*, 2009-NMSC-041, ¶ 6, 146 N.M. 680; *see also Brown v. Cobb*, 1949-NMSC-016, ¶ 8, 53 N.M. 169. A plaintiff is entitled to a presumption of undue influence if "a confidential or fiduciary relation with a donor is shown together with suspicious circumstances," such as old age and weakened mental condition, lack of consideration, unjust disposition of the property, domination over the donor by the beneficiary, or concealment of the transaction. *Baca*, 2009-NMSC-041, ¶ 7. Thus, a plaintiff can prevail at trial on an undue influence claim without presenting any evidence of fraudulent conduct. In light of this fact, it would be improper to apply Rule 9(b)'s heightened pleading standard to an undue influence claim. Similarly, Rule 9(b) does not apply to claims of duress and coercion because these claims do not require the plaintiff to show intentional misrepresentation, which is the *sine qua non* of fraud. *Compare Saylor v. Valles*, 2003-NMCA-037, ¶ 21, 133 N.M. 432 (listing elements of fraudulent misrepresentation claim) *with Bettini v. City of Las Cruces*, 1971-NMSC-054, ¶ 82 N.M. 633 (explaining when payment should be deemed invalid due to duress) *and Pecos Constr. Co. v. Mortgage Inv. Co.*, 1969-NMSC-134, ¶ 8, 80 N.M. 680 (defining duress).

Defendants cite a variety of cases that recognize that fraud and undue influence are similar claims. None of these cases, however, involve an interpretation of Rule 9(b). For this reason, they add little to the above analysis and do not seriously detract from the Court's finding that Plaintiff is not obliged to plead his undue influence, coercion, and duress claims with

particularity under Rule 9(b).[4]

###   e.   Legal Sufficiency of Plaintiff's Claim regarding the Validity of the April 2012 Lease Transfer

As previously discussed, one of the five suspect property transactions challenged by Plaintiff is an April 2012 Agricultural Lease transfer between Plaintiff and Defendants. This transfer is signed by Darline Brown as power of attorney for Plaintiff. While Plaintiff challenges Darline's authority to execute this transfer, he admits that he gave Darline a limited power of attorney regarding his interest in the agricultural leases at issue. *Doc. 1*, Ex. 1 ¶ 10. A copy of this power of attorney is attached to the complaint. *Id.* at 14.

Defendants contend that the Court should dismiss Plaintiff's claim regarding the lease transfer and find the transfer valid as a matter of law under the unambiguous language of the power of attorney, which states that Darline had the power to "negotiate, maintain, administer, renew, extend, assign, relinquish and in every way deal with [the] New Mexico State Grazing Leases . . ." Despite this language Plaintiff persists in his position that he did not "give the Power of Attorney to his mother for any purpose other than dealing with the State Land Office." *Doc. 18* at 8. Plaintiff's private intentions, however, are irrelevant to the issue at hand: whether Plaintiff should be considered bound by the agricultural lease transfer because Darline acted within the scope of her authority as Plaintiff's agent when she approved the transfer.

"Once agency has been established, the statements, representations, or admissions made by the agent to a third party will bind the principal . . . if the agent was actually or apparently authorized to make the particular statements . . ." *Diversified Dev. & Inv., Inc. v. Heil*, 1995-NMSC-005, ¶ 27, 119 N.M. 290. Actual authority exists "whenever the principal manifests to the agent that the agent is to act on his account." *Id.* ¶ 30. In other words, actual authority does not

---

[4] Defendants do not argue that these claims should be dismissed under the standards of Rule 8(a).

depend on the internal intentions of the principal and may exist despite these intentions, if the agent reasonably interprets the principal's words and actions as endowing the agent with the authority to conduct whatever business is at issue. *Id.*; *see also Ham v. Ellis*, 1937-NMSC-089, ¶ 39, 42 N.M. 241 ("The test as to whether [an agency-creating instrument] includes the power to act in the manner in which the agent undertook to deal is not how it was understood by the principal, but whether, upon its being read by [a] third person, [the third person] could reasonably have assumed it to extend to authorize the act undertaken. . .").

Here, the limited power of attorney that Plaintiff signed unambiguously gave his mother, Darline, the power to "relinquish and in every way deal with" the agricultural leases. *Doc. 1*, Ex. 1 at 14. Plaintiff has not alleged that he ever told (or otherwise communicated to) his mother that this power was in any way qualified. In the absence of such allegations, Plaintiff's claim that Darline lacked the actual authority to transfer the agricultural leases to Defendant Darien fails as a matter of law. The Court will, therefore, dismiss this claim with prejudice.[5]

### f.   Legal Sufficiency of Plaintiff's Breach of Fiduciary Duty Claim

In the complaint, Plaintiff asserts that the suspect property transactions may have been the result of "breach of fiduciary duty." *Id.* ¶ 22. As Defendants point out, the nature of this claim is unclear. *Doc. 16* at 15. Plaintiff does not specify whether he is claiming that Defendants breached a fiduciary duty to Plaintiff, that Defendants breached a fiduciary duty to Darline, or that Darline breached a fiduciary duty to Plaintiff. Nonetheless, all of these potential claims are problematic. First, the complaint does not contain any facts from which the Court can reasonably infer that Defendants owed Plaintiff a fiduciary duty. While Defendants may have had fiduciary obligations to Darline, Plaintiff does not appear to be arguing that he is authorized to bring

---

[5] In so doing, the Court does not express any opinion about Plaintiff's remaining challenges to the validity of the lease transfer – that Darline was incapacitated, unduly influenced, coerced or under duress. Defendants have not moved to dismiss these claims.

claims on her behalf. Finally, even though Darline had a fiduciary duty to Plaintiff as Plaintiff's agent, Plaintiff has not sued Darline's estate for breach of this duty. Given these problems and Plaintiff's failure to clarify the nature of his breach of fiduciary duty claim in the response, the Court will dismiss this claim as asserted against Defendants with prejudice.[6]

### g. Legal Sufficiency of Plaintiff's Claim regarding the 2008 Correction Mortgage

Towards the end of their motion, Defendants assert that "Plaintiff has no interest in the mortgage that would give him legal standing for a declaratory judgment." *Doc. 16* at 14. However, Defendants do not develop this argument in their motion, Plaintiff does not address it in his response, and Defendants make no mention of it in their reply. Given the lack of briefing on the issue, the Court is not in a position to make a ruling on the matter except to note that Plaintiff's interest in the mortgage would appear to stem from his alleged status as a beneficiary to the trust that owned the property at issue at the time the mortgage was signed. To the extent Defendants are attempting to challenge the sufficiency of this interest, the Court finds that they have waived this argument, for the purposes of the present motion, by failing to adequately brief the issue. *See Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1169 (10th Cir. 2002) (one-sentence argument waived because not adequately briefed); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

### h. Legal Sufficiency of Plaintiff's Claim regarding the Validity of the Remaining Property Transactions

Throughout their briefing, Defendants complain about Plaintiff's decision to invoke a variety of alternative legal theories – incapacity, fraud, undue influence, coercion, and duress –

---

[6] Plaintiff has informed the Court that he intends to add breach of fiduciary claims against the Estate of Darline Brown. *Doc. 23*. These claims are not presently before the Court and the Court expresses no opinion about their merit. It is only dismissing the breach of fiduciary duty claim asserted by Plaintiff against Defendants.

to explain why the challenged transactions are invalid. For instance, in the reply, Defendants

accuse Plaintiff of writing his complaint like "a carnival shooting gallery" in which "a parade of

different asserted causes of action are set up to force the Defendants to keep shooting at moving

targets." *Doc. 19* at 11. Aside from their colorful language, however, Defendants do not provide

any legal authority that would justify preventing Plaintiff from relying on alternative legal

theories as long as the factual allegations in the complaint support each theory. Similarly, aside

from boilerplate language about the facial plausibility of Plaintiff's claims, Defendants do not

directly contest the sufficiency, under Rule 8(a), of Plaintiff's allegations of incapacity, undue

influence, coercion, and duress. As a result, Defendants' generic criticisms of Plaintiff's

incapacity, undue influence, coercion, and duress claims never coalesce into a viable argument

amenable to legal analysis.

While it is possible that Defendants want the Court to dismiss these remaining claims, the

Court will not step into Defendants' shoes and craft arguments in favor of dismissal on

Defendants' behalf, especially here where the essence of Plaintiff's incapacity, undue influence,

coercion, and duress are clear; Plaintiff alleges that Defendants improperly pressured Darline

Brown into signing documents giving them family property when Darline was suffering from

dementia and was not capable of forming the necessary intent to give them this property.

Defendants may deny that this occurred, but this is not a basis for dismissal. Defendants have fair

notice of Plaintiff's basis for seeking relief against them. Thus, the Court will not dismiss

Plaintiff's incapacity, undue influence, coercion, and duress claims (as they relate to the property

transactions discussed above).

### i.   Punitive Damages

Defendants request dismissal of the punitive damages claim. Defendants argue that

19

Plaintiff cannot legally recover punitive damages because punitive damages are only available upon a showing of bad faith and Plaintiff has failed to plead his fraud claims with particularity. *Doc. 16* at 15. This argument does not hold together. Just because Plaintiff has failed to adequately allege fraud against Defendants does not mean that Plaintiff may not recover punitive damages on his tortious interference claims. In the complaint, Plaintiff specifically contends that "[t]he actions of the Defendants were purposeful and malicious. They were intended to, and did cause, great harm to Plaintiff." *Doc. 1*, Ex. 1 ¶ 26. At this stage in the proceedings, this allegation, combined with allegations in the complaint that Defendants took advantage of Darline's "diminished capacity," adequately support a claim for punitive damages. *See Vigil v. Burlington Northern & Santa Fe Ry.*, 521 F. Supp. 2d 1185, 1221 (D.N.M. 2007) ("Punitive damages may be appropriate where a defendant's conduct was malicious, willful, reckless, wanton, fraudulent or in bad faith.") (citing NMRA, Civ. UJI 13-1827).

## V.    Conclusion

The Court has addressed each of Defendants' arguments in favor of dismissing Plaintiff's claims. As mentioned in the introduction, these arguments do not cover all of the claims in the complaint. Notably, Defendants never mention Plaintiff's tort claims, and the Court does not construe the motion for partial judgment on the pleadings as requesting dismissal of these claims. Based on this decision and on the above rulings, the following claims remain active in this case: (1) Plaintiff's request that the Court find that Darline Brown lacked the capacity to execute the five property transactions listed in the table in Part I above, (2) Plaintiff's claim that these transactions are invalid because they are the result of undue influence, duress, and coercion, and (3) Plaintiff's two tort claims. At the March 20, 2015 hearing, the parties agreed that the Court should stay these claims if it found that it lacked jurisdiction over the claims regarding the

validity of the will. Because the Court has made this finding, the Court will stay the case pending the outcome of the probate proceeding Plaintiff intends to file.

**IT IS ORDERED THAT:**

1. Defendants' motion for partial judgment on the pleadings (*Doc. 17)* is GRANTED in part and DENIED in part.

2. Plaintiff's claims regarding the validity of the will and Darline's intestacy are dismissed without prejudice for lack of jurisdiction.

3. Plaintiff's fraud claims are dismissed without prejudice.

4. Plaintiff's claim that Darline Brown lacked the authority as his agent to transfer Plaintiff's agricultural leases to his brother is dismissed with prejudice.

5. Plaintiff's breach of fiduciary duty claim is dismissed with prejudice.

6. All of Plaintiff's other claims (which are listed above) are stayed pending the filing and resolution of a probate proceeding regarding the validity of Darline Brown's will. The parties are ordered to institute this probate action by May 29, 2015.  The Court will hold a telephonic status conference on June 2, 2015 at 11:00 a.m. to ensure that this has occurred. The parties shall call Judge Yarbrough's "Meet Me" conference line at 505-348-2277 to connect to the proceedings.


STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE